# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2023 WY 118

*October Term, A.D. 2023*

December 7, 2023

| | |
|---|---|
| **BOARD OF BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR,**<br><br>Petitioner,<br><br>v.<br><br>**TONIA R. HANSON, WSB #6-3710,**<br><br>Respondent. | **D-23-0005** |

## ORDER OF DISBARMENT

[¶1]    **This matter** came before the Court upon the Board of Professional Responsibility's Report and Recommendation (for disbarment), filed herein October 27, 2023, pursuant to Rule 16 of the Wyoming Rules of Disciplinary Procedure. The Court notes Respondent has not filed an objection to the Board of Professional Responsibility's Report and Recommendation. The Court, after a careful review of the Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court, and that Respondent Tonia R. Hanson should be disbarred. It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation, Respondent Tonia R. Hanson shall be, and hereby is, disbarred, effective immediately; and it is further

[¶4]    **ORDERED** that Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules. That rule governs the duties of disbarred and suspended attorneys; and it is further

[¶5] **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall pay the Wyoming State Bar the amount of $2,628.99, which represents the costs incurred in handling this matter, as well as pay administrative fees of $1,500.00. Respondent shall pay the total amount of $4,128.99 to the Wyoming State Bar on or before March 1, 2024. If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶6] **ORDERED** that Respondent shall pay restitution in the amount of $40,000.00 to the Wyoming Community Foundation on or before May 1, 2024. If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶7] **ORDERED** that the Clerk of this Court shall docket this Order of Disbarment, along with the incorporated Report and Recommendation, as a matter coming regularly before this Court as a public record; and it is further

[¶8] **ORDERED** that, pursuant to Rules 9(b) and 16(f) of the Wyoming Rules of Disciplinary Procedure, this Order of Disbarment, along with the incorporated Report and Recommendation, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶9] **ORDERED** that the Clerk of this Court cause a copy of this Order of Disbarment to be served upon Respondent Tonia R. Hanson.

[¶10] **DATED** this 7th day of December, 2023.

BY THE COURT:

/s/

**KATE M. FOX**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

OCT 27 2023

*[signature]*

SHAWNA GOETZ, CLERK

**BEFORE THE SUPREME COURT**

**STATE OF WYOMING**

| | |
|---|---|
| *In the matter of* | ) |
| *TONIA R. HANSON,* | ) |
| *WSB # 6-3710,* | ) *WSB Nos. 2020-059 and 2021-128* |
| | ) |
| *Respondent.* | ) |

**D - 2 3 - 0 0 0 5**

**REPORT AND RECOMMENDATION**

THIS MATTER came before a Hearing Panel of the Board of Professional Responsibility of the Wyoming State Bar ("BPR") on September 19, 2023, for a sanction hearing via Zoom teleconference pursuant to Rule 15(b)(3)(C), W.R.Disc.P. Hearing Panel members Katherine A. Strike (chair), John A. Masterson and Brett McPeak were in attendance. The Wyoming State Bar was represented by Bar Counsel, Mark W. Gifford. Respondent Tonia R. Hanson ("Respondent") was present, without counsel. Bar Counsel's Exhibit BC-1, consisting of Bates numbered pages OBC 0001 through OBC 4281, was received into evidence. The Hearing Panel heard testimony from Bob Adams, the Complainant in WSB No. 2020-059; from Misty Gehle, Chief Financial Officer of the Wyoming Community Foundation; and from Respondent.

Bar Counsel submitted a *Bar Counsel's Sanction Hearing Brief* prior to the evidentiary hearing on September 19, 2023. The Hearing Panel agrees that the *Brief* was not submitted in a timely fashion and hopes this situation will be avoided in the future. At hearing, Respondent made comments and objections regarding said brief. Accordingly, the Hearing Panel provided Respondent with five days to file a response to *Bar Counsel's Sanction Hearing Brief*, based on Respondent's request for that amount of time.

On September 26, 2023, Respondent submitted an email to the Hearing Panel, making comments and objections, primarily to *Bar Counsel's Sanction Hearing Brief*.

The Hearing Panel notes that the sanction hearing was evidentiary in nature. It adjourned afterwards and allowed Respondent to comment and object to the *Brief*. The Hearing Panel has reviewed and considered Respondent's September 26, 2023 email comments and objections in reaching its decision.

The Hearing Panel concludes that witness testimony at the sanction hearing was appropriate as the impact the Respondent's actions had on those involved is relevant to a determination of sanctions. That testimony was considered by the Hearing Panel with appropriate weight given to the different forms and content of testimony.

The Respondent had the opportunity to present witness testimony and evidence at the sanction hearing but chose to not do so.

In her e-mail objections to the *Brief*, Respondent also objects to the submission of *Bar Counsel's Proposed Report and Recommendation*. The Hearing Panel notes it is the historical practice of the BPR to have such pleadings prepared by Bar Counsel when violations are found, and to provide a Respondent with the opportunity to review, comment, and object to any part of it. Any respondent could submit their own report and recommendation, as well. The ultimate decision is, of course, left to the Hearing Panel.

Further, it is common practice in Wyoming courts for the "prevailing party" in contested matters to draft proposed orders and submit them to the court, providing the opposing party that same opportunity to review, comment, and object.

More importantly, as to this objection of the Respondent, she was given the opportunity to review and submit comments and objections to the *Proposed Report and Recommendation* but chose not to do so.

In her email objections to the *Brief*, Respondent states that "history has shown that the BPR rubber stamps bar counsel's (*sic*) submission." At any BPR hearing, a respondent is permitted, if not encouraged, to fully participate by presenting evidence and testimony on their behalf, as well as argue their position. A hearing panel then, in its deliberations, considers all the evidence and testimony, as well as all comments and objections. The Respondent chose to not avail herself of these opportunities. The gratuitous "rubber stamp" comment by Respondent is not only of no assistance to the Hearing Panel, and consequently disregarded in considering any sanctions, but demonstrates an unfortunate disregard and disrespect for the disciplinary process overseen by the Wyoming Supreme Court.

After a thorough review of the voluminous evidentiary record, witness testimony, and the comments and objections by all parties, and a complete review of the *Report and Recommendation*, the Hearing Panel finds it to be comprehensive and complete. Therefore, the Hearing Panel unanimously FINDS, CONCLUDES and RECOMMENDS, as follows:

## Findings of Fact

1.      The Formal Charge in this matter, in the form and with the content required by Rule 13(a), W.R.D.P., was served upon Respondent by electronic mail and United States certified mail, return receipt requested, on July 11, 2023, and was served personally and in person upon Respondent on July 19, 2023.

2.      Rule 14(a) provides in relevant part:

> Within 20 days after service of the formal charge, or within such greater period of time as may be approved by the BPR or a Disciplinary Judge, the respondent shall file the original of an answer to the formal charge with the BPR Clerk and shall serve a copy upon Bar Counsel.

3.      When Respondent failed to file an answer to the Formal Charge, Bar Counsel moved for entry of default. On August 10, 2023, default was entered by the BPR Clerk. Respondent

did not object to or otherwise challenge the entry of default. Pursuant to Rule 14(b)(1), the allegations of the Formal Charge have, therefore, been deemed admitted. The Formal Charge alleged violations of the following Rules of Professional Conduct by Respondent:

| | |
|---|---|
| Rule 1.15 | Safekeeping client property |
| Rule 3.3 | Candor to the tribunal |
| Rule 3.4(c) | Failure to comply with orders or rules of the tribunal |
| Rule 8.4(c) | Conduct involving fraud, deceit and misrepresentation |

4. Respondent Tonia R. Hanson was, at all times relevant hereto, a private practitioner with an office in Buffalo, Wyoming. She was admitted to the Wyoming State Bar in 2004. In December 2022, Respondent changed her status from "active" to "inactive." *See* Bylaws of the Wyoming State Bar, Article I, Section 3.

5. The formal charge arose from two complaints received by the Office of Bar Counsel regarding Respondent. Bar Counsel's investigation of the two complaints revealed a pattern of violations of the rule regarding lawyer trust accounts, as well as significant breaches of Respondent's fiduciary duties regarding elderly, vulnerable clients and other ethical violations, including misrepresentations to the tribunal and failure to comply with court orders.

The Glynn Webb guardianship/conservatorship (WSB No. 2021-128)

6. In July 2015, Respondent established the Wyoming guardianship/conservatorship for Ms. Webb. Respondent had Respondent's mother, Clara Hanson, appointed as guardian/conservator.

7. The petition to establish the guardianship/conservatorship identified two parcels of real property owned by Ms. Webb – an 80-acre tract of mountain land (described in other filings as Bull Camp Road) and a 40-acre tract of grazing land (described in other filings as 1350 Sussex Road) with a combined worth of $250,000. *See* OBC 2119-2120.

8.    Without first obtaining the Court's approval, Respondent facilitated the sale of the 40-acre tract for $14,000.00 in August 2015, with net proceeds to the guardianship/conservatorship of $12,942.88. OBC 1671, 1762-63, 1839, 2231. Respondent's failure to obtain prior Court approval to sell the 40-acre tract constituted a breach of her fiduciary duty to the Glynn Webb guardianship/conservatorship.

9.    In October 2015, Respondent facilitated the sale of the 80-acre tract of mountain land to another client, Bill Hein, for $37,000.00. Respondent helped Mr. Hein create a limited liability company, H & H REC, LLC, for the purpose of acquiring the land. OBC 0015-16, 0439.

10.    In November 2015, Respondent filed a petition for Court authority to sell the two tracts of land for a combined sale price of $50,942.38. OBC 2147-48. Respondent failed to disclose in the petition that the 40-acre tract had already been sold for $14,000.00; nor did she disclose that the 80-acre tract was under contract to sell to her client, Bill Hein, for $37,000.00. These omissions constituted a breach of Respondent's duty of candor to the Court.

11.    On December 2, 2015, the Court entered an order granting authority to sell the two parcels of land owned by Ms. Webb for a total sale price of $50,942.88. OBC 2152. The following day, Bill Hein made a $22,000.00 payment for the 80-acre tract of mountain land, which was deposited to Respondent's trust account. OBC 0413, 1844. On December 21, 2015, the land was conveyed by warranty deed to H & H REC, LLC. OBC 0030. The January 3, 2016, closing statement for this transaction indicates a gross sale price of $37,000.00, less a $17,000.00 allowance for fence repair and a $10,000.00 allowance for mice infestation, with net proceeds to the Glynn Webb guardianship/conservatorship of $10,000.00. OBC 1764, 1864.

12.    Thus, though the Court authorized the sale of the two parcels for a combined sale price of $50,942.88, the total proceeds paid to the guardianship/conservatorship were $22,942.88

($12,942.88 for the 40-acre tract plus $10,000.00 for the 80-acre tract). This constituted both a breach of Respondent's fiduciary duty to the Glynn Webb guardianship/conservatorship as well as a failure on Respondent's part to comply with a Court order.

13. Rather than pay the $12,000.00 that remained of Bill Hein's $22,000.00 down payment on the land to the Glynn Webb guardianship/conservatorship, Respondent applied it to legal fees owed by Mr. Hein. OBC 1668, 1688. Thus, Respondent converted funds properly belonging to the Glynn Webb guardianship/conservatorship to her own benefit, a breach of her fiduciary duty to the guardianship/conservatorship.

14. On February 29, 2016, Respondent filed a semi-annual guardian's report for the Glynn Webb guardianship/conservatorship. The report indicated that the two parcels had been sold for a total net sale price of $47,942.88. OBC 2155-57. This representation was false.

15. Ms. Webb passed away on July 27, 2017. On March 13, 2018, Respondent filed a final accounting and report of guardian and conservator for Glynn Webb. OBC 2207.

16. The 80-acre tract of mountain land came to be owned by Respondent's daughter, Tyffani, when she purchased H & H REC, LLC from Bill Hein in October 2019 for $38,000.00. OBC 0335.

### The Warren Buxton and Edith Sarver estates (WSB No. 2020-059)

17. Henry and Edith Sarver were long-time clients of Respondent. Edith had named Respondent as her alternate power of attorney in 2012. OBC 1953. When Henry died on August 13, 2015, Respondent became Ms. Sarver's power of attorney, something she exercised frequently in the last years of Edith's life, signing checks and other documents of legal significance for Edith.

For the last years of her life, Edith was in assisted living with a variety of health challenges, including failing eyesight which rendered her nearly blind.

18.     A few months after Henry's death, Edith executed a new will, prepared by Respondent, which left everything to her brother, Warren Buxton, with any residual estate going to the Wyoming Community Foundation. OBC 1895. The new will named Warren as Edith's personal representative and Deborah Olson, a friend of Respondent, as alternate.

19.     Three months after Edith signed the new will, on April 4, 2016, Warren, a resident of New Mexico, was killed in a motor vehicle accident in Oklahoma. OBC 1886. Warren left an estate consisting of a home in New Mexico, a sizeable and valuable gun collection and other assets. Warren was also a tenant in common, with Edith, on a valuable oil-and-gas producing property in Garfield County, Colorado, which paid thousands of dollars in royalties every month. Upon Warren's death, Edith became the sole owner of both the land as well as the mineral estate for the property. Edith was Warren's sole heir.

20.     One week after Warren's death, Edith signed documents conveying one-half of the mineral estate for the Colorado property to Respondent and Deborah Olson, in equal shares. OBC 2098. Edith conveyed the land itself to Respondent. OBC 2005. Respondent prepared the relevant documents and explained, in response to Bar Counsel's inquiry, "[Edith] expressed her desire that I have the Colorado property in appreciation for all of the time and effort I devoted to her and her husband over the years and for looking out for their best interest." OBC 2065.

21.     When Edith declined to serve as her brother's personal representative, Respondent assumed the role and engaged an Albuquerque law firm to open a probate proceeding in New Mexico, with Respondent appointed as personal representative. OBC 1973, 2290. Respondent did not establish a separate checking account for Mr. Buxton's estate. Instead, Respondent ran

everything through her trust account. Respondent submitted a policy-limits demand to State Farm Automobile Insurance Company, the insurer of the vehicle in which Warren was killed. OBC 3476. The $100,000.00 insurance settlement which followed was deposited to Respondent's trust account on June 20, 2016. OBC 1854, 3483.

22. On June 24, 2016, Respondent signed a trust account check made payable to the Estate of Warren Buxton in the amount of $60,000.00. It is not clear where that money went. A deposit in that amount does not appear in any of Edith's several accounts at First Northern Bank. OBC 2857, 2919, 2983. Respondent's failure to account for those funds is a violation of trust account rules as well as a breach of her fiduciary duty to the Buxton estate.

23. Respondent paid three claims totaling more than $150,000 from Buxton estate funds. OBC 1857, 2442. In her deposition, Respondent testified that she made these payments to three purported creditors based solely upon their requests for payment. She did no due diligence to verify the validity of these claims. This was a breach of Respondent's fiduciary duty to the Buxton estate.

24. Warren Buxton's gun collection, worth several hundred thousand dollars, was sold at auction. *See* OBC 2105. However, there are no corresponding deposits of proceeds from gun sales to Respondent's trust account nor to any of Edith's accounts at First Northern Bank. The failure to account for those funds is a violation of applicable trust account rules as well as a breach of Respondent's fiduciary duty to the estate.

25. Following Henry's death, Respondent signed dozens of checks on Edith's bank accounts at First Northern Bank, many of them to Hanson Law Office. In 2016 alone, Respondent signed checks on Edith's bank accounts payable to Hanson Law Office totaling nearly $25,000.

*See* OBC 2745, 2753, 2765, 2771, 2777, 2909, 2920. Without documentation to support these payments, they constitute a breach of Respondent's fiduciary duty to her client.

26.    On October 25, 2016, Edith consolidated her various First Northern Bank accounts into two accounts and authorized Respondent to access Edith's banking and financial records from First Northern Bank. OBC 3643-44.

27.    Less than one month before Edith's death, on September 28, 2018, Chris and Carmen Rodriguez signed a promissory note in the amount of $150,000.00 to Edith, payable in annual installments of $10,000.00 at 2.2% interest, commencing, more than three years hence, on December 1, 2021. OBC 1931. There is no evidence this loan was ever funded during Edith's lifetime.

28.    According to Respondent, Edith's health declined in the last two or three months of her life. She stopped eating. OBC 2077. On October 19, 2018, the day before Edith's death, Respondent deposited $386,554.16 from one of Edith's certificates of deposit at First Northern Bank into Respondent's trust account. OBC 2412-2413. The bank records indicate that the certificate of deposit account was "closed per Tonia Hanson for Edith." OBC 3654. Those funds were commingled with funds in Respondent's trust account belonging to Respondent's other clients. Respondent described this as a "generous gift" from Edith.

29.    Following Edith's death on October 20, 2018, Respondent filed a petition for probate of Edith's estate on November 21, 2018. OBC 1892. The petition listed assets consisting of bank accounts, certificates of deposit, investment accounts, and note receivable valued at $2,617,819.80, and requested appointment of Deborah Olson, n/k/a/ Deborah Jennings, as the personal representative for the estate. The order admitting Edith's will to probate and appointing Ms. Jennings as personal representative was issued November 27, 2018. OBC 1898.

30. A checking account for Edith's estate was opened at First Interstate Bank. On December 3, 2018, funds totaling $2,592,405.17 were wire transferred from Edith's accounts at First Northern Bank to the Sarver estate checking account at First Interstate Bank. OBC 2621, The same day, a check to Wilcox Abstract and Title Co. in the amount of $300,000.00 was issued from the estate checking account. OBC 3764. The Checking Withdrawal form for the transaction was signed by Ms. Jennings. OBC 3797.

31. The $300,000.00 was used to purchase a ranch for Chris and Carmen Rodriguez as part of a total purchase price of $1,360,000. The purchase was facilitated by Respondent. OBC 3899. It is unclear why $300,000.00 of the estate's funds were spent for the benefit of Chris and Carmen Rodriguez when the promissory note the couple signed in September 2018 was only $150,000.00. On December 26, 2018, $2,306,137.17 remained in the Sarver estate checking account. OBC 3764.

32. Respondent facilitated the payment of the $300,000.00 without requesting or obtaining Court approval for the payment. This constituted a breach of Respondent's fiduciary duty to the estate and a fraud upon the Wyoming Community Foundation, the rightful recipient of these funds under Edith's will.

33. On June 7, 2019, Respondent filed a notice of final settlement of the Edith Sarver estate with the probate court and sent a copy to the beneficiary of the estate, the Wyoming Community Foundation. OBC 1907. Respondent applied for and obtained Court approval to pay herself attorney fees and costs in the amount of $53,765.96. OBC 1910, 1921. Respondent also requested and obtained approval for payment of the personal representative's fee to Ms. Jennings in the amount of $52,794.96. OBC 1908, 1921.

34.     On June 24, 2019, the Court entered an order approving final report and accounting and decree of final distribution of Edith's estate; approving payment of $53,765.96 to Respondent and $52,794.96 to Ms. Jennings, with payment of balance of the estate to the Wyoming Community Foundation. OBC 1921. On June 26, 2019, checks were issued on the Edith Sarver estate checking account to Respondent in the amount of $53,765.96 and to Ms. Jennings in the amount of $52,794.96. OBC 3771, 3799, 3800.

35.     On June 26, 2019, a cashier's check in the amount of $2,190,000.00 was cut to the Wyoming Community Foundation. OBC 1928, 3771. This check was transmitted by Respondent to the Wyoming Community Foundation via letter dated July 9, 2019. The letter stated in part, "there will be additional funds forwarded once the accountant has finalized the tax return." OBC 1927. This was a misrepresentation by Respondent, who knew no tax return for the estate was necessary. *See* OBC 1906.

36.     On September 3, 2019, Respondent wrote to the Wyoming Community Foundation and requested forgiveness of the debt owed to the Edith Sarver estate by Chris and Carmen Rodriguez. OBC 1929. Respondent enclosed a copy of the September 28, 2018, promissory note from Chris and Carmen Rodriguez to Edith Sarver in the amount of $150,000.00 – half the amount that was actually expended by the estate to help with the purchase of the ranch by Chris and Carmen Rodriguez. OBC 1931. This deceit constituted fraudulent conduct by Respondent.

37.     The Wyoming Community Foundation complied with Respondent's request. Form 1099s in the amount of $75,000.00 each were issued to Chris and Carmen Rodriguez evidencing forgiveness of the $150,000.00 debt. OBC 1937. The amount of the 1099s should have been $150,000.00 for each party, adding up to the $300,000.00 loan. Thus, Respondent was complicit in a tax fraud with respect to the Rodriguez debt forgiveness.

38. No additional funds were ever paid to the Wyoming Community Foundation. Instead, Respondent and Ms. Jennings split the remaining money in the estate checking account. On September 14, 2020, $40,160.50 was paid from the account to Respondent. $40,160.49 was paid to Ms. Jennings. OBC 3762, 3786. These payments were made in violation of the Court order for distribution of Ms. Sarver's estate. They were fraudulent and constituted a theft of estate funds.

39. Respondent's conduct as set forth above violated the following Rules of Professional Conduct:

40. Rule 1.15 (lawyer trust accounts) – Respondent failed to maintain copies of the trust account records required by Rule 1.15. Respondent often left earned fees in her trust account and withdrew them, often in increments of a few hundred dollars, as needed. Respondent commingled personal funds with funds belonging to others. *See* ¶¶ 13, 22, 24, 25, 28, 31.

41. Rule 3.3 (candor to the tribunal) – Respondent made multiple misrepresentations in documents she prepared and filed with courts as set forth above. *See* ¶¶ 10, 14.

42. Rule 3.4(c) (compliance with orders and rules of the tribunal) – Respondent failed to comply with legal requirements and violated court orders as set forth above. *See* ¶¶ 8, 12, 32, 38.

43. Rule 8.4(c) (fraud, misrepresentation and deceit) – Respondent committed multiple acts of fraud and deceit as set forth above. *See* ¶¶ 13, 22, 24, 25, 28, 31, 32, 35, 36, 37, 38.

44. Based upon Respondent's default as to allegations contained in the Formal Charge, which are, therefore, deemed admitted (Rule 14(b)(1)), as well as the Hearing Panel's review of the records contained in Exhibit BC-1, consisting of Bates numbered pages OBC 0001 through OBC 4281, the Hearing Panel finds that the foregoing rules violations have been proven by clear and convincing evidence.

45. The Hearing Panel finds that Respondent engaged in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on Respondent's fitness to practice. Respondent knowingly converted client property and caused significant actual injury to her clients, as well as potential injury. Respondent, with the intent to deceive the court, made false statements, submitted false documents, and improperly withheld material information, and caused serious injury to a party and caused significant adverse effects on legal proceedings. The presumptive sanction for Respondent's misconduct, applying the ABA Standards set forth below to each duty violated by Respondent, is disbarment.

46. With regard to Respondent's mental state, the Hearing Panel finds that Respondent acted intentionally in committing the rules violations listed above. Respondent's actions were clearly knowing, deliberate, and done with the conscious objective of accomplishing the particular result.

47. Respondent's conduct inflicted actual injury upon her clients, third parties, and the legal profession. This injury included the comingling of client and attorney-trust funds, the misappropriation of client funds entrusted to her as a fiduciary, depriving third parties of an inheritance, and making false statements to the court.

48. Aggravating factors present in this case include (a) a dishonest or selfish motive; (b) a pattern of misconduct; (c) refusal to acknowledge the wrongful nature of Respondent's conduct; (d) vulnerability of Respondent's victims; (e) substantial experience in the practice of law; and (f) indifference to making restitution.

49. The sole mitigating factor is the absence of a prior disciplinary record.

50. In consideration of these findings, the Hearing Panel finds that disbarment is the appropriate sanction for Respondent's misconduct.

51.    The Hearing Panel recommends that Respondent be ordered to pay restitution in the amount of $40,000.00 to the Wyoming Community Foundation. [1]

## Conclusions of Law

52.    Rule 1.15(a), W.R.Prof.Cond. provides in relevant part, "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Comment [1] adds, "A lawyer should hold property of others with the care required of a professional fiduciary."

53.    Rule 3.3, W.R.Prof.Cond. provides in relevant part, "(a) A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer …."

54.    Rule 3.4(c), W.R.Prof.Cond. provides a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

55.    Rule 8.4(c), W.R.Prof.Cond. provides, "It is professional misconduct for a lawyer to: … (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation …."

56.    Rule 14, W.R.Disc.P. provides:

Rule 14.  Answer to Formal Charge – Filing, Failure to Answer, Default.

(a)    *Answer.*  Within twenty (20) days after service of the formal charge, or within such greater period of time as may be approved by the BPR or a Disciplinary Judge, the respondent shall file the original of an answer to the formal charge with the BPR Clerk and shall serve a copy upon Bar Counsel. In the answer the respondent shall either admit or deny every material allegation contained in the formal charge, or request that the allegation be set forth with greater particularity. In addition, the respondent shall set forth in the answer any affirmative defenses. Any objection to the formal charge which a respondent may assert, including a challenge

---

[1] The Hearing Panel recognizes that Respondent's actions likely result in additional restitution being owed. However, calculating those additional amounts and to whom they are owed is beyond the scope of this disciplinary hearing. We note that civil remedies are available to others who may have been harmed.

to the formal charge for failure to charge misconduct constituting grounds for discipline, must also be set forth in the answer.

(b) *Failure to answer; default; failure to appear.*

(1) If the respondent fails to file an answer within the period provided by subsection (a) of this Rule, Bar Counsel shall file a motion for default with the BPR Clerk. Thereafter, the BPR Clerk shall enter a default and the formal charge shall be deemed admitted; provided, however, that a respondent who fails to file a timely answer may, upon a showing that the failure to answer was the result of mistake, inadvertence, surprise, or excusable neglect, obtain leave of the BPR to file an answer.

(2) Notwithstanding the entry of a default, Bar Counsel shall give the respondent notice of the sanction hearing, at which Bar Counsel and the respondent may appear and present evidence and arguments to the BPR regarding the form of discipline to be imposed. Thereafter the BPR shall conduct a sanction hearing and order a private reprimand or submit its report and recommendation to the Court as provided in Rule 15.

(3) If the respondent should fail to appear when so ordered by the BPR, the respondent shall be deemed to have admitted the factual allegations which were to be the subject of such appearance and/or to have conceded any motion or recommendations to be considered at such appearance. The BPR shall not, absent good cause, continue or delay proceedings due to the respondent's failure to appear.

57. Rule 15(b)(3)(D), W.R.Disc.,P., lists the factors to be considered in determining lawyer sanctions:

(D) In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions, which standards shall be applied by the BPR in determining the appropriate sanction:

(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii) Whether the lawyer acted intentionally, knowingly, or negligently;

(iii) The actual or potential injury caused by the lawyer's misconduct; and

(iv) The existence of any aggravating or mitigating factors.

58.     The American Bar Association's Standards for Imposing Lawyer Sanctions (the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct, and essentially mirrors the language of Rule 15(b)(3)(D):

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

59.     Standard 5.1 sets forth the sanction guidelines for lawyers who demonstrate a failure to maintain personal integrity and is applicable to situations in which lawyers have committed a violation of Rule 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation):

5.1     *Failure to Maintain Personal Integrity*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:

5.11 Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

5.13 Reprimand [i.e., "public censure" under Rule 9(a)(3), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

5.14 Admonition [i.e., "private reprimand" under Rule 9(a)(4), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

60. Respondent's violation of Rule 1.15 (safekeeping client property) falls within Standard 4.1:

4.1 *Failure to Preserve the Client's Property*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:

4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

4.12. Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

4.13 [Public censure] is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

4.14 [Private reprimand] is generally appropriate when a lawyer is negligent in dealing with client property and causes little or no actual or potential injury to a client.

61. Violations of Rule 3.3 (candor to the tribunal) require the application of ABA Standard 6.1, "False Statements, Fraud and Misrepresentation." ABA Standard 6.1 sets forth the following guidelines:

6.1 *False Statements, Fraud, and Misrepresentation*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:

6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.13 Reprimand [*i.e.,* "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent either in determining whether the statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal system, or causes an adverse or potentially adverse effect on the legal proceeding.

6.14 Admonition [*i.e.,* "private reprimand" under 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether the submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no adverse or potentially adverse effect on the legal proceeding.

62. Respondent's violations of Rule 3.4(c) (failure to comply with rules and orders of the tribunal) fall under Standard 6.2:

6.2 *Abuse of the Legal Process*

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of the tribunal except for an open refusal based on an assertion that no valid obligation exists:

6.21 Disbarment is generally appropriate when a lawyer knowingly violates a court order or a rule with the intent to obtain a benefit for the lawyer or another,

and causes serious or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

6.23 [Public censure] is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

6.24 [Private reprimand] is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

63. The preamble to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

64. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury."

65. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2   *Aggravation*

9.21  *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22  *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

9.3   *Mitigation*

9.31  *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32  *Factors which may be considered in mitigation.* Mitigating factors include

(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
    (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
    (2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4   *Factors Which Are Neither Aggravating nor Mitigating.*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

## Recommendation

Based upon the foregoing findings and conclusions, the Board recommends that the Court issue an order of Respondent's disbarment; that Respondent be required to pay an administrative fee of $1,500.00 ($750.00 for each of the two complaints) as provided in Rule 25(b), W.R.Disc.P.; that Respondent be ordered to pay restitution in the amount of $40,000.00 to the Wyoming Community Foundation; and that Respondent be required to reimburse the Wyoming State Bar for certified costs of this proceeding as provided in Rule 25(e), W.R.Disc.P.

Dated this 18th day of October, 2023.

Katherine A. Strike, Hearing Panel Chair
Board of Professional Responsibility
Wyoming State Bar